IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE ELKINS, SR., CLARENCE ELKINS, JR., | ) | |
| BRANDON ELKINS, MELINDA ELKINS, AND ANNE | ) | |
| SILAGY, CHAPTER 7 TRUSTEE FOR THE | ) | Case No. 5:06 CV 3004 |
| BANKRUPTCY ESTATES OF CLARENCE ELKINS, JR. | ) | |
| AND MELINDA ELKINS, | ) | |
| | ) | |
| PLAINTIFFS, | ) | Hon. Judge Gwin |
| | ) | |
| v. | ) | |
| SUMMIT COUNTY, OH, SUMMIT COUNTY | ) | |
| PROSECUTOR'S OFFICE, SHERRI BEVAN WALSH, | ) | Mag. Judge Gallas |
| MARY ANN KOVACH, MIKE CARROLL, ALISON | ) | |
| McCARTY, CITY OF BARBERTON, OH, CHIEF | ) | |
| MICHAEL KALLAI, SGT. MAIFRER, OFFICER | ) | |
| DANTON, DETECTIVE M. HUDAK, DETECTIVE J. | ) | |
| FLAKER, DETECTIVE DAVIS, LT. GREG MACRO, | ) | |
| SGT. DON ADAMSON, DETECTIVE JIM WEESE, AND | ) | |
| DETECTIVE BRUCE BERLIN, | ) | |
| | ) | |
| DEFENDANTS. | ) | JURY DEMAND |

## Amended Complaint

1.    This is a 42 U.S.C. § 1983, claim, wherein Plaintiff Clarence Elkins (hereafter "Mr. Elkins") is seeking relief for his loses which occurred as a result of his false arrest, false imprisonment, defamation, slander, malicious prosecution, invasion of privacy and abuse of process committed by the Barberton Police Department, County of Summit County Prosecutor's Office, Summit County Prosecutor Sherri Bevan Walsh, Assistant Summit County Prosecutor Mary Ann Kovach, Assistant Summit County Prosecutor Michael Carroll. Assistant Summit County Prosecutor Becky Doherty, former Assistant Summit County Prosecutor Alison McCarty, the City of Barberton, the City of Barberton Police Chief Michael Kallai, Officer Danton Adair, Detectives M Hudak, Bruce Berlin, Jim Weese, J.L. Flaker, B Davis, Sergeants John Adamson and Maurer, Lieutenant Greg Macko, and, involved in the investigation and prosecution of Mr. Elkins.

2.    This is also a claim for negligent supervision against Summit County Prosecutor Sherri Bevan Walsh, and Assistant Summit County Prosecutor Mary Ann Kovach, the City of Barberton, and Barberton Police Department Chief of Police Kallai.

3.    This is also a claim for loss of consortium, wherein Plaintiffs Brandon Elkins, Clarence

Elkins, Jr., and Melinda Elkins, and are seeking relief for their losses which occurred as a result of the injustices mentioned above and below, suffered by the Plaintiffs and their father/husband Clarence Elkins.

4.   In addition, Plaintiffs Clarence Elkins, Clarence Elkins, Jr., Brandon Elkins, and Melinda Elkins are seeking relief from losses which result from the severe emotional distress inflicted upon them by the Defendants listed in this complaint, as well as their losses resulting from the Defendants' outrageous acts and invasion of Plaintiffs' privacy.

5.   Finally, Plaintiffs Clarence Elkins, Clarence Elkins, Jr., Brandon Elkins, and Melinda Elkins are also seeking relief from losses resulting from the defamatory and slanderous statements made by the Defendants, as well as the continual reporting of Mr Elkins as a sexual predator.

6.   The Plaintiffs are seeking compensatory, punitive damages, attorney fees, as well as all costs and fees.

## JURISDICTION

7.   Jurisdiction is invoked in this Court under 28 U.S.C. Section 1331.

## PARTIES

8.   Plaintiff Clarence Elkins is a resident of the County of Stark, Furthermore, Plaintiff Elkins is a United States citizen.

9.   Plaintiffs Clarence Elkins, Jr., and Brandon Elkins, are residents of the County of Stark, are United States citizens and are the children of Plaintiff Clarence Elkins.

10.   Plaintiff Anne Silagy is the Chapter 7 Trustee for the Bankruptcy Estates of Clarence Elkins, Jr. and Melinda Elkins.  Pleading in the alternative, should the Court determine that the claims of Plaintiff Clarence Elkins, Jr. and/or Melinda Elkins are the property of their respective bankruptcy estates, Plaintiff Anne Silagy, as Chapter 7 Trustee for their Bankruptcy Estates, asserts all claims held by them on behalf of their bankruptcy estates.

11.   Defendant, County of Summit, is a chartered county government that employs the Summit County Prosecutor's Office to prosecute for violation of the laws of the State of Ohio and the United States.

12.   Defendant Summit County Prosecutor's Office is a department within County of Summit, Ohio, responsible for the lawful prosecution of the laws of the State of Ohio and the United States.

2

13. Defendant Sherri Sevan Walsh, an elected official, is employed by the Summit County Prosecutors' Office as the Summit County Prosecutor and is responsible for all individuals who work at the Summit County Prosecutor's Office. At all times relevant to this Complaint, Ms. Walsh was performing investigatory functions rather than acting as an advocate for the state.

14. Defendants Mary Ann Kovach, Michael Carroll, and Becky Doherty are employed by Defendant Summit County Prosecutor's Office as Assistant County Prosecutors. At all times relevant to this Complaint, these Defendants were performing investigatory functions rather than acting as an advocate for the state.

15. Defendant Alison McCarty was previously employed by Defendant Summit County Prosecutor's Office as an Assistant County Prosecutor. At all times relevant to this Complaint, Ms. McCarty was performing investigatory functions rather than acting as an advocate for the state.

16. Defendant City of Barberton, Ohio, is a chartered city government that employs a police department to enforce the laws of Barberton, Ohio, the State of Ohio, and the United States.

17. Michael Kallai is the Chief of the Barberton Police Department and is responsible to uphold the laws of the State of Ohio, as well as the United States. Chief Kallai is also responsible for supervising of all employees of the Barberton Police Department.

18. Defendants M Hudak, Don Adamson, Danton Adair, Jim Weese, J.L., Flaker, Sergeant Maurer, B. Davis, Bruce Berlin, and Greg Macko are or were employed by the Barberton Police Department.

## FACTS

19. Late in the evening of June 6, 1998, or in the early morning hours of June 7, 1998, Ms, Judith Johnson was brutally raped and murdered in her small Barbertoa, Ohio home.

20. Ms. Johnson's six year old granddaughter, Brooke Suttoa, was present on the night of the murder That evening, she was awakened by yelling and found a man standing over her grandmother. The lighting was poor .

21. The perpetrator saw the child and subsequently victimized her by raping and attempting to murder her as well.

22. Clarence Elkins, Sr. had absolutely nothing to do with the aforementioned rapes or murder.

3

23. On June 7, 2006, Brooke awoke to find her grandmother dead on the living room floor Brooke and Ms Johnson were covered in blood, as was the living room where Ms Johnson was murdered.

24. The perpetrator left a very bloody crime scene.

25. After finding her grandmother dead, Brooke called a neighbor and left the following message: "I need somebody to get my mom for me I'm all alone. Somebody killed my grandma."

26. Brooke ran to a neighbor's home and told the neighbor, Tonya Brasiel that the man who killed her grandmother sounded like "Uncle Clarence."

27. After finding Brooke on her front porch covered in blood, instead of immediately calling the police, Ms Brasiel told the child to wait on her porch while she got ready to take her home. After making the blood covered child wait on her porch, Ms, Brasiel drove her home.

28. By the time the child reached her mother, Ms Elkins sister, April Sutton, what had happened, the attacker was no longer "somebody." It was Uncle Clarence.

29. Within hours, police arrested Mr Elkins and charged him with the murder.

30. Mr Elkins immediately denied the allegations.

31. His clothing was taken and his fingernails were scraped by officers employed by the Barberton Police Department.

32. Ultimately there was no physical evidence linking Mr Elkins to the murder, No blood was recovered from Mr., Elkins' clothing even though the murder scene was horrifically bloody. Hair samples found near Mr Johnson and her granddaughter did not match Mr, Elkins or the victims.

33. On June 10, 1998, Mr. Elkins was indicted by the Summit County Court of Common Pleas Grand Jury on the following charges:

    1. Aggravated Murder in violation of RC, 2903 Q1(A)(B), as well as three death specifications;
    2. Attempted Aggravated Murder in violation of R-C 2903,01 (B),
    3. Rape in violation of R C 290Z02(A)(l)(b); and,
    4. Felonious Assault in violation of R.C., 2903 11(A)(1).

34.  Mr. Elkins was 40 miles away, sleeping at his Magnolia home, around the time of the attack.

35.  Mr. and Ms. Elkins both testified that he was home with Ms. Elkins at the time of Ms. Johnson's death.

36.  However, Brooke Sutton, the only witness to the crimes, testified that her uncle, Clarence Elkins, committed the crimes.

37.  On June 4, 1999, following a jury trial, Mr. Elkins was convicted of Murder, Attempted Aggravated Murder, Rape and Felonious Assault.

38.  On June 18, 1999, the trial court sentenced Mr. Elkins, Sr. to a term of incarceration often years for Attempted Murder; to a term of incarceration often years for Rape; and, to life in prison for each of the remaining counts of Rape.

39.  Mr. Elkins was also sentenced to two ten-year terms of incarceration for the remaining specifications regarding the Rape convictions. In addition, the Felonious Assault conviction was merged with the Aggravated Murder conviction.

40.  Mr Elkins was told at the sentencing hearing that he would not be eligible for parole until June 3, 2054.

41.  In 2002, Brooke Sutton recanted her claim that Clarence Elkins was the man that raped and murdered her grandmother.  She also indicated that her uncle was not the man who raped and tried to kill her.

42.  Although she insisted that Mr Elkins was not the man who committed the terrible crimes on June 7, 1998, Judge John Adams refused to reverse Mr, Elkins conviction and give him a new trial.

43.  In January 2005, Mr Elkins, once again, approached the trial court with new evidence.

44.  Scientists at Orchid Cellmark in Dallas, Texas, were able to gather a profile from male DNA recovered from the victims' bodies and from the crime scene.  Mr Elkins was excluded as the person whose DNA was recovered.

45.  Once again, the trial court denied Mr. Elkins' request for a new trial.

46.  During the summer of 2005, Mr, Elkins discretely obtained a cigarette butt from Earl Mann, a suspect developed by Ms. Elkins, who worked tirelessly in hopes of gaining Mr Elkins' release and finding her mother's real killer.  By coincidence, Earl Mann was housed in the same prison as Mr. Elkins at the time.

5

47. Mr Elkins mailed the cigarette to his attorney, Jana DeLoach, who subsequently sent the butt to Orchid Cellmark in Dallas, Texas.

48. DNA from Mann's cigarette butt matched DNA recovered from the victims' bodies and other areas within the crime scene tested prior to Mr Elkins' second request for a new trial.

49. The real killer of Ms. Judith Johnson and rapist of Brooke was Earl Mann.

50. Prior to the murder and rape of Ms Johnson, Mann was in the custody of Oriana House. However, Mann had escaped from Oriana House just days before Ms Johnson's demise.

51. On the date of Ms. Johnson's murder, June 7, 1998, Earl Mann lived two doors down from Ms. Johnson with his girlfriend, Tonya Braisail and their three children.

52. Mann had a long history of violence, which became progressively worse over the course of several years. His crimes ranged from misdemeanors to felonies, including, but not limited to Aggravated Robbery. He was also being investigated for child molestation at the time Ms. Johnson was murdered.

53. It was no mystery that Earl Mann lived two doors down from Ms Johnson.

54. Earl Mann was never considered a suspect by the Barberton Police Department.

55. Barberton Police Department employees never inquired as to why Tonya Brasiel made a six year old little girl, who was covered in blood, wait on the porch for quite some time while she readied herself and her three little girls to take Brooke home.

56. Barberton Police Department employees never inquired as to why Tonya Brasiel didn't immediately call the police after hearing that her neighbor had been murdered..

57. After learning of Ms. Johnson's murder, Barberton Police Department immediately zeroed in on Mr Elkins and failed to further investigate and other suspect or find the real killer, Earl Mann, who lived two doors down from the murder/rape victim.

58. For approximately eight and a half years, Mr, Clarence Elkins, an innocent man, served time in prison for crimes that he did not commit.

59. Prior to Mr, Elkins' conviction, Brooke Sutton informed several individuals, police officers and Assistant Summit County Prosecutor, that she was not sure who killed her grandmother. After Mr Elkins' trial, Brooke maintained that prior to the trial she had repeatedly told two blond ladies at the Summit County Prosecutor's Office that she was

not sure who killed her grandmother The two ladies were later identified as former Summit County Assistant Prosecutors AJison McCarty and Becky Doherty.

60.  The fact that Brooke Sutton claimed she was not sure who committed these crimes was never released to defense counsel.

61.  The fact that Brooke testified so convincingly at trial that her Uncle Clarence killed her grandmother is quite telling since she has always maintained that she was not sure who committed the crimes.

62.  Further investigation by Mr Elkins' post conviction counsel revealed that on the day that Brooke Sutton was released from the hospital, she told her grandmother's best friend, Beverly Kasck, that she did not know who killed her grandmother

63.  Beverly Kasck reports that she approached a Barberton Police Detective and informed him that Brooke Sutton told her that she (Brooke) did not know who killed her grandmother. Ms. Kasck states that she made a recorded statement to Detective, but that the tape was destroyed by the Barberton Police Department.

64.  During Mr., Elkins' trial. Summit County Assistant Prosecutor Mike Carroll vehemently protested when Ms. Kasck attempted to testify about Brooke's statements to her and the tape recorded interview she gave to the Barberton Police Department. Ms. Kasck was threatened with prosecution of providing a false statement to law enforcement officials and contempt if she continued trying properly inform the court and jury what she knew.

65.  Brooke maintains to this day that she told everyone involved in Mr. Elkins' case that she was unsure about who raped her and killed her grandmother, Ms. Kasck maintains to this day, that she informed the Barberton Police Department detectives that Brooke told her she was not sure who committed these heinous crimes.

66.  During Mr. Elkins' trial, Summit County Assisted Prosecutors and the Barberton Police Department theorized that Mr. Elkins hated his mother in law and that he knew that she had placed an extra to her home in her mail box. Because there was no forced entry, they claimed that Mr. Elkins had retrieved the key and used it to gain entrance into the home.

67.  After Mr. Elkins' trial, April Sutton (Ms, Elkins' sister), received some of her mother's personal items from the Summit County Prosecutor's Office. Within the items received was a single house key that was stained, possibly with blood. The key was the house key that belonged to Ms. Johnson.

68.  The key was not presented at trial as an exhibit even though testimony regarding the key was presented. Furthermore, employees of the Barberton Police Department did not ask Mr Elkins for his keys, nor did they ask for his keys to see if he had his mother in law's

house key.

69. Ms Johnson's daughters, Melinda Elkins and April Sutton, both identified the key as the key that their mother occasionally kept in the mailbox.

70. After their investigation, the Barberton Police Department and its representative employees, left an abundance of evidence at the crime scene

71. Shortly after Ms Johnson's murder and upon returning to her mother's home to cleanup the crime scene, April Sutton found her mother's glasses underneath the couch splattered with blood.

72. In addition, Barberton Police Detectives left a lampshade in the residence that revealed a very visible bloody handprint. When Ms,. Sutton asked Detectives if they needed the lampshade, they stated "No."

73. Approximately one year after Ms, Johnson's death, Ms Elkins and an investigator returned to the crime scene. They found Ms Johnson's cat that had supposedly disappeared after the murder. The cat was found under some bushes directly in front of the house.  The cat had been killed and still had Christmas lights wrapped around its neck.

74. Ms. Elkins was able to identify the cat by the fur that was still present, even though the cat had been reduced to bones. The Christmas light strand was twisted around the cat's neck and was secured with a C-clamp. Brooke Sutton had a large "C" shaped bruise on the side of her face that was approximately the same size as the C-clamp. This evidence could have been utilized by the defense during Mr. Elkins' trial.

75. After Mr. Elkins' trial, the Summit County Prosecutor's Office returned Ms. Johnson's ring to Ms. Sutton Upon receiving the ring (along with other personal effects), Ms. Sutton found dried skin covering one of the stones of the ring. Had the skin been tested, it would have shown that Clarence Elkins was not the killer.

76. In addition to the above mentioned evidence disregarded by Barberton Police Department Detectives, the detectives also left other evidence at the crime scene including a Polaroid camera that contained fingerprints.  The prints looked as though someone had held the camera with bloody hands while taking pictures. The stain is still present on the camera, although it has turned brown.

77. Barberton police detective police also left behind a small table that had blood on it.  Ms. Johnson's dentures were also left at the scene of the crime. Ms Sutton found them in a blue chair behind a cushion. They were broken.

8

78. Furthermore, Barberton Police detectives did not take the sheet from the hospital that Brooke Sutton was placed on during her medical examination.

79. In addition, the detectives never obtained a videotape from the hospital which may have reflected a man entering Brooke's hospital room while she was sleeping. Nurse Marie Gadheri was the nurse who found the man in Brooke's room. Ms. Gadheri called the Barberton police and reported having the man in her room. When she saw Mr. Elkins picture the next day in the newspaper, she realized how much this man looked like Clarence. She knew, however, that Mr. Elkins was in jail and that it could not have been him. She informed the Barberton Police Department of this but was told the information was immaterial and not important.

80. In addition to leaving so much evidence at the scene of the crime, the police also were very sloppy in their investigation and ruined evidence. A bloody handprint was found on the entry way of Ms. Johnson's front door which was subsequently ruined Barberton Police Department employees. There was also a bloody fingerprint on a door jam that Barberton detectives smeared and ruined.

81. The detectives also found a mayonnaise jar at the crime scene. It was later learned that mayonnaise was possibly used as a lubricant in the rapes. However, the detectives dropped and broke mayonnaise jar at the crime scene.

82. Finally, during Mr. Elkins' most recent post conviction hearing, Summit County Assistant Prosecutor Michael Carroll, purposely handled the child rape victim's panties without using gloves. If Carroll had been a civilian, he would have been charged with Tampering With Evidence, arrested and prosecuted.

83. Not only was evidence ignored and destroyed by the Barberton Police Department, it was also altered. This exculpatory evidence was never disclosed to Mr. Elkins or his defense counsel. In addition, the fact that other evidence was fabricated was also withheld from Mr. Elkins and his defense counsel.

84. James Curry, one of Ms. Johnson's neighbors, reported to the Barberton Police that he saw a man was running down the alley from east to west and that he was wearing an army jacket or trench coat. He also reported that the man had blonde hair. However, the Barberton Police Department reported something different. The police report indicates that Mr Curry reported that he saw a man on the night of the murder running down the street in a green jogging suit.

85. Another potential witness who lived in Johnson's neighborhood reported to the Barberton Police Department that her car had been stolen on the night of the murder. She reported that as she was out looking for her car that night, she saw two people - a man and a woman. The police report indicates that she reported that the woman she saw had

strawberry blonde hair (the police initially suspected Ms. Elkins was involved) and the man had dark hair. The report also reflected that she said the man was only slightly taller than the woman and that the couple was arguing in a white mid-sized car. However, at trial, the woman testified that the woman was short (Ms. Elkins is tall and only slightly shorter than Mr. Elkins) and that she had blond and black hair. She also testified that the man was only 5'9" or 5' 10" and that the couple was not arguing.

86.  The malicious prosecution, abuse of process, false imprisonment, unlawful search and seizure, defamation and slander, as well as the withholding of exculpatory evidence by the Defendants in this matter against Mr. Elkins continued through and until December 15, 2005. It also is still occurring with respect to Summit County Prosecutor Michael Carroll and Becky Doherty, who still claim that Clarence Elkins was involved in the crimes in issue. They now state and report that Mr Elkins must have been in some way involved with Earl Mann in committing these heinous crimes.

87.  Despite the Defendants' insistence that Mr. Elkins truly committed the crimes in issue, on December 15, 2005, Mr. Elkins was finally released from prison.

88.  On December 15, 2005, the indictment against Mr. Elkins was dismissed and Defendant Summit County Prosecutor's Office admitted that he had not committed the crimes on June 7, 1998.

89.  Subsequent to the dismissal of the criminal proceedings, the Summit County Prosecutor's Office promised Mr Elkins that they would make certain that the convictions would be erased in all law enforcement databases.

90.  Despite the promise made by Defendant Summit County Prosecutor's Office to ensure that Clarence was no longer labeled a sexual predatory and murderer, these allegations are still reported in several databases.

91.  The defamatory and slanderous statements made by the Defendants resulted in exploitation of the Plaintiffs' personalities, in the aforementioned manner, and caused outrage, mental suffering, shame, and humiliation to Plaintiffs Clarence Elkins, Sr., Clarence Elkins, Jr., Brandon Elkins and Melinda Elkins.

92.  A few weeks following Mr Elkins' release from prison Defendant Sherry Bevan Walsh, Clarence Elkins, Melinda Elkins, April Sutton and attorney Jana DeLoach met with Defendant Sherri Bevan Walsh.

93.  During the aforementioned meeting, Defendant Walsh indicated that the she and the Summit County's Prosecutor's Office had not admitted that Plaintiff Clarence Elkins was wrongfully accused and incarcerated because it would have been more difficult for Defendant Summit County Prosecutor's Office to investigate suspect Earl Mann had

10

Plaintiff Elkins been released any earlier.

94. As a result of the bad sets committed by the Defendants, as well as the defamatory statements, withholding of exculpatory evidence, abuse of process and the false imprisonment perpetrated by the Defendants, the Plaintiffs have suffered severe emotional distress.

95. As a result of the aforementioned criminal charges, abuse of the criminal prosecution process, the bad acts perpetrated by the Defendants, as well as their failure to provide Mr. Elkins exculpatory evidence, the Plaintiffs continue to suffer from severe emotional distress, and harm to their reputations.

96. As a result of the Defendants' total lack of regard to the constitutional notion of a fair trial, as well as their grossly negligent and reckless manner in which they conducted their investigation, Mr. Elkins was convicted and ultimately served seven and one-half years in prison for crimes that he did not commit.

## COUNT I
## DUE PROCESS

97. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

98. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Mr. Elkins of his constitutional right to a fair trial.

99. In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence. Absent this misconduct, the prosecution of Mr. Elkins could not and would not have been pursued.

100. The Defendants' misconduct also directly resulted in the unjust criminal conviction of Mr. Elkins, thereby denying him his constitutional right to a fair trial, a fair appeal thereof, and fair post-conviction proceedings, all in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

101. As a result of this violation of his constitutional right to a fair trial, Mr. Elkins suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

102. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Elkins' constitutional rights.

103. The misconduct described in this Count was the result of deficient training and/or

11

supervision by the City of Barberton and Summit County.

104. The training and/or supervision was wholly inadequate for the investigation into the Johnson rape murder and the Brooke rape.

105. The inadequate training and/or supervision was the result of the City of Barberton and the County of Summit's deliberate indifference.

106. The inadequate training and/or supervision was the moving force behind the constitutional violations suffered by Mr. Elkins.

## COUNT II
## FALSE IMPRISONMENT

107. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

108. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, caused Mr. Elkins to be falsely imprisoned in violation of his constitutional rights.

109. As a result of this violation, Mr. Elkins suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

110. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Elkins' constitutional rights.

111. The misconduct at issue was undertaken pursuant to the policy and practice of the Barberton Police Department in the manner described more fully in preceding paragraphs103-106.

## COUNT III
## MALICIOUS PROSECUTION

112. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

113. In the manner described more fully above, Mr. Elkins was improperly subjected to judicial proceedings unsupported by probable cause to believe that she had committed a crime. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Mr. Elkins' favor in a manner indicative of his innocence.

12

114. Specifically, the Defendant Police Officers accused Mr. Elkins of criminal activity knowing those accusations to be without probable cause and made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

115. The Defendant Officers made statements regarding Mr. Elkins' alleged culpability with knowledge that the statements were false and perjured. In so doing, the Defendant Officers fabricated evidence and withheld exculpatory information.

116. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

117. As a proximate result of this misconduct, Mr. Elkins suffered injuries, including but not limited to emotional distress.

118. The misconduct described in this Count was undertaken by the Defendant Police Officers within the scope of their employment and under color of law such that their employer, City of Barberton, is liable for their actions.

## COUNT IV
## ABUSE OF PROCESS

119. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

120. The Defendants' bad acts and abuse of the prosecutorial process before, during, and after Mr. Elkins' trial, and as well as the Defendants' misuse of and misapplication of the criminal process, ultimately deprived Mr. Elkins of his right to due process and privacy, as well as his right to be free from false conviction and false imprisonment, as guaranteed by the United States Constitution, as well the Ohio Constitution.

## COUNT V
## DEFAMATION/SLANDER

121. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

122. Defendants' malicious, false and defamatory statements to crime reporting agencies, the media and others about the Plaintiffs, some of which were published without privilege to third parties, defamed the Plaintiffs and caused them to suffer severe emotional, mental and physical distress as well as extreme mental suffering, humiliation and property damage.

13

## COUNT VI
## INVASION OF PRIVACY

123. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

124. Defendants' actions more fully described above resulted in the unwarranted appropriation or exploitation of the Plaintiffs' personalities and private lives. Furthermore, the Defendants' actions described above resulted in the publication of the Plaintiffs' private affairs with which the public had no legitimate concern. Finally, the Defendants' bad acts constituted a unwarranted and wrongful intrusion into the Plaintiffs' private activities in such a manner as to cause outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

## COUNT VII
## NEGLIGENT SUPERVISION AND RETENTION

125. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

126. Defendants City of Barberton, Chief Mallai, Summit County Prosecutor Sherry Bevan Walsh, and the supervisors' within the aforementioned city and county agencies, negligently supervised and retained Mary Ann Kovach, Michael Carroll, Becky Doherty, and Alison McCarty as well as police officers within the Barberton Police Department resulted in Mr. Elkins being deprived of his right to due process, right to privacy, right to be free from false arrest, false imprisonment, wrongful conviction, and unwarranted appropriation or exploitation of his personality and private life, as well as the other Plaintiffs' personalities and private lives.

## COUNT VIII
## LOSS OF CONSORTIUM

127. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

128. As a result of the Defendants' bad acts and purposeful misconduct, Plaintiffs Brandon Elkins and Clarence Elkins, Jr suffered the loss of consortium with their father, as well as his care, companionship, comfort, love, solace and his ability to financially provide for said Plaintiffs.

129. As a result of the Defendants' bad acts and purposeful misconduct, Plaintiff Melinda Elkins suffered the loss of consortium with her husband, as well as his care,

companionship, comfort, love, solace and his ability to financially provide for said Plaintiff.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

130. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

131. As described more fully in the preceding paragraphs, by attempting to frame Plaintiff for a murder he did not commit, the Defendants engaged in extreme and outrageous conduct by detaining an innocent man.

132. The misconduct described in this Count was rooted in an abuse of power or authority.

133. The misconduct described in this Count was undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

134. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

135. As a proximate result of this misconduct, Plaintiff suffered emotional distress and anguish.

## Count X
## Failure to Intervene

136. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

137. In the manner described above, during the constitutional violations described above, one or more of the Defendants stood by without intervening to prevent the misconduct.

138. As a result of the Defendants' failure to intervene to prevent the violation of Mr. Elkins' constitutional rights, Mr. Elkins suffered pain and injury, as well as emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

139. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Elkins' constitutional rights.

15

140. The misconduct described in this Count was undertaken pursuant to Barberton's policy and practice in the manner described in preceding paragraphs 103-106.

## Count XI
### Section 1983 Conspiracy to Deprive Constitutional Rights

141. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

142. After the Johnson murder, the Defendants reached an agreement amongst themselves to frame Mr. Elkins for the crime, and to thereby deprive Mr. Elkins of his constitutional rights, all as described in the various Paragraphs of this Amended Complaint.

143. Independently, before and after Mr. Elkins' convictions, each of the Defendants further conspired, and continue to conspire, to deprive Mr. Elkins of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

144. In this manner, the Defendant Officers, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

145. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

146. As a direct and proximate result of the illicit prior agreement referenced above, Mr. Elkins' rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

147. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

148. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Barberton Police Department in the manner described more fully in preceding paragraphs 103-106, and was tacitly ratified by policy-makers for the City of Barberton with final policymaking authority.

## COUNT XII
### Respondeat Superior

149. Each of the Paragraphs of this Amended Complaint is incorporated as if restated fully herein.

16

150. In committing the acts alleged in the preceding paragraphs, the Defendants were members of, and agents of, either the Barberton Police Department or the Summit County Prosecutor's Office acting at all relevant times within the scope of their employment.

151. Defendants City of Barberton and Summit County are liable as principal for all torts committed by their agents.

WHEREFORE, Plaintiffs, respectfully request that this Court enter judgment in their favor and against Defendants, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted:

S/Russell Ainsworth
Attorneys for Plaintiffs
Arthur Loevy
Jon Loevy
Russell Ainsworth
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

Michele Berry
3834 Hyde Park Ave.
Suite 1
Cincinnati, OH 45209

17

## CERTIFICATE OF SERVICE

I, Russell Ainsworth, an attorney, certify that on August 17, 2007, I served this document by ECF electronic filing as to each party who is represented by counsel who uses electronic filing.

> S/Russell Ainsorth
> Attorneys for Plaintiff
> Arthur Loevy
> Jon Loevy
> Russell Ainsworth
> LOEVY & LOEVY
> 312 North May Street
> Suite 100
> Chicago, IL 60607
> (312) 243-5900

18