UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------

CLARENCE ELKINS, ET AL., : CASE NO. 5:06-CV-3004

        Plaintiffs,

  vs. : OPINION & ORDER
: [Resolving Doc. No. 10]

SUMMIT COUNTY, OHIO, ET AL.,

        Defendants.

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Before this Court is a motion to dismiss filed by Defendants Summit County; the Summit County Prosecutor's Office; Prosecuting Attorney Sherri Bevan Walsh; and current and former Assistant County Prosecutors Mary Ann Kovach, Becky Doherty, Mike Carroll, and Alison McCarty (collectively, the "County Defendants"). [Doc. 10.] The Plaintiffs oppose the motion. [Doc. 15.] For the following reasons, the Court **GRANTS** the County Defendants' motion to dismiss.

**I. Background**

On June 6, 1998, Judith Johnson was raped and murdered in her home in Barberton, Ohio. [Doc. 39 at 3.] Her granddaughter Brooke was also assaulted and raped. Based on statements about the perpetrator allegedly provided by Brooke, the Barberton Police Department arrested her uncle, Plaintiff Clarence Elkins ("Elkins"). On June 10, 1998, Plaintiff Elkins was indicted by a grand jury in the Summit County Court of Common Pleas on charges of aggravated murder, attempted aggravated murder, rape, and felonious assault. *Id.* at 4. A jury trial was conducted the following

Case No. 5:06-CV-3004
Gwin, J.

year. At trial, Brooke testified that the Plaintiff committed the crimes. Plaintiff Elkins was convicted of all crimes for which he was indicted on June 4, 1999 and, two weeks later, was sentenced to life in prison with no eligibility for parole until 2054. *Id.* at 5.

In 2002, Brooke recanted her testimony, but the state court decided not to reverse the conviction. [Doc. 39 at 5.] In 2005, Plaintiff Elkins again presented new evidence to the court, but his request for a new trial was not granted. *Id.* at 5. That same year, Plaintiff Elkins managed to obtain DNA evidence that possibly linked another individual, Earl Mann, to the crime. This discovery prompted an investigation that ultimately resulted in the Plaintiff's release from prison, after having been incarcerated for over seven years. Upon the dismissal of the criminal case against Plaintiff Elkins, the Summit County Court of Common Pleas found that Plaintiff was a "wrongfully imprisoned person" and the State of Ohio awarded Plaintiff $1,075,000 as a wrongful imprisonment settlement. [Docs. 10-3, 10-7.] Ohio has filed murder charges against Mann.

On December 18, 2006, Plaintiff Clarence Elkins and his sons, Clarence, Jr. and Brandon, filed this present case against the County Defendants, as well as the City of Barberton and various Barberton Police Department employees (collectively, the "Barberton Defendants"), for violations of federal and state law relating to Plaintiff Elkins' wrongful arrest, conviction, and imprisonment. [Doc. 1.] In the complaint, the Plaintiffs raise several claims against the County Defendants: (1) a claim for violation of Plaintiff Elkins' due process rights brought under 42 U.S.C. § 1983; (2) a false imprisonment claim; (3) a malicious prosecution claim; (4) an abuse of process claim; (5) a claim based on defamation and/or slander; (6) an invasion of privacy claim; (7) a negligent supervision and retention claim; (8) a loss of consortium claim brought by Plaintiff's two sons and ex-wife; and (9) an intentional infliction of emotional distress tort claim. *Id.*

Case No. 5:06-CV-3004
Gwin, J.

On May 24, 2007, the Summit County Defendants filed a motion to dismiss all claims against them. [Doc. 10.] The County Defendants argue that they are entitled to absolute and statutory immunity, that the Plaintiffs have failed to state a claim upon which relief can be granted, and that dismissal of all claims is appropriate. The County Defendants also argue that Plaintiff Elkins executed a release when he settled his wrongful imprisonment claim that should be interpreted as releasing claims against the Prosecutors because they were acting as agents of the State of Ohio. *Id.* On June 25, 2007, the Plaintiffs opposed the County Defendants' motion to dismiss. [Doc. 15.] After the Defendants replied, the Plaintiffs moved to supplement their response to the motion to dismiss with respect to the settlement issue. [Docs. 18, 32.] Over the Defendants' objection, this Court granted the Plaintiff's motion to supplement on August 22, 2007. [Docs. 36, 61.] The Plaintiffs then filed their supplemental response, to which Defendants replied on August 29, 2007. [Docs. 62, 76.]

The Plaintiffs filed an amended complaint on August 17, 2007, adding a due process claim, a claim for failure to intervene, and claims under the doctrine of respondeat superior.[1] [Doc. 39.] The County Defendants filed an answer to the amended complaint and asserted a counterclaim against the Plaintiffs on September 7, 2007. [Doc. 81.]

## II. Legal Standard

The Court can dismiss a complaint only when "it is clear that the plaintiff can prove no set of facts in support of [the] claim that would entitle [the plaintiff] to relief." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). In deciding a motion under Rule 12(b)(6) of the Federal Rules of Civil

---

[1] The Plaintiffs also filed a second amended complaint on August 21, 2007. [Doc. 60.] The Court, however, had already set the deadline for amendment of pleadings for August 17, 2007. [Doc. 24.] The Plaintiffs' second amended complaint was not filed with leave of the Court and thus was not properly filed.

-3-

Case No. 5:06-CV-3004
Gwin, J.

Procedure, the Court must accept all of the allegations contained in the plaintiff's complaint as true and construe the complaint "liberally in favor of the party opposing the motion." *Id.* at 377. However, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997) (internal citation omitted). While the Court is obliged to accept as true the well-pleaded allegations in the complaint, the Court need not accept as true the "bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995). The Court also need not accept "unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Nevertheless, the Court may only grant a motion to dismiss when the facts of the complaint show that there is an insuperable bar to relief for the plaintiff.

### III. Analysis

The County Defendants move to dismiss all of the Plaintiffs' claims against them for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 10.] The Court will address each of the Plaintiffs' claims in turn.

### A. Federal Cause of Action: Section 1983 Claim[2]

The Plaintiffs claim that the County Defendants violated Plaintiff Elkins' civil rights, in contravention of 42 U.S.C. § 1983, by conspiring to deprive him of constitutional rights to due process and a fair trial. [Doc. 39.] Section 1983 provides a federal cause of action for civil damages against an individual acting under color of state law who deprives another of "rights, privileges, or

---

[2] In their amended complaint, the Plaintiffs add a Fourteenth Amendment due process claim. 42 U.S.C. § 1983, however, is the only proper vehicle for Plaintiffs to assert their due process claim against the County Defendants and, therefore, this Court will consider the due process arguments as part of the § 1983 claim as generally alleged in the amended complaint.

Case No. 5:06-CV-3004
Gwin, J.

immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Construing liberally the allegations in the complaint and assuming that the facts as stated therein are true, the County Defendants allegedly violated Plaintiff Clarence Elkins' due process rights by: bringing false charges against the Plaintiff; procuring false testimony from Brooke; failing to inform the Plaintiff's counsel about Brooke's uncertainty as to who killed her grandmother; knowingly presenting Brooke's false testimony at trial; deliberately withholding exculpatory evidence, including Brooke's statements; fabricating false reports and other evidence; objecting to evidence during trial; improperly handling evidence at a post-conviction hearing; and refusing to dismiss the indictment against the Plaintiff or release him from jail after the Defendants knew he was innocent. [Doc. 39.]

In response, the County Defendants argue that the Court should dismiss the § 1983 claim because they are immune from suit. [Doc. 10.] Further, the County Defendants say that the Prosecutor's Office is not an entity capable of being sued and the Plaintiffs have failed to state a claim.

*1. Eleventh Amendment Immunity: County Prosecutors in Their Official Capacities*

Plaintiffs make distinct claims regarding the county prosecutors. They say these prosecutors violated their rights in the prosecutors' investigation of the criminal charges and alternatively violated their rights in the prosecutors' presentation of evidence. Some officials, including country prosecutors, serve two masters. When they prosecute cases, they act on behalf of the state. District attorneys performing investigatory and other functions, however, are officers of the county and not similarly entitled to Eleventh Amendment immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-75 (1993) (prosecutor is not absolutely immune when he allegedly fabricated evidence during the

Case No. 5:06-CV-3004
Gwin, J.

investigation by retaining a dubious expert witness.)

Under the Eleventh Amendment, a state, its officials, and its employees may be sued in federal court only when the state has consented to suit. *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). This doctrine applies to lawsuits where a party challenges the acts of state officials or employees in their official capacities and seeks money damages. *See Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir. 1994). The Eleventh Amendment bars such suits because a judgment would be satisfied from the state's treasury and, therefore, the state is the real party in interest. *Id.* Section 1983 does not abrogate Eleventh Amendment immunity of state governments. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

The Sixth Circuit has held that county prosecutors, in the course of prosecuting crimes, act as agents of the State and are immune from suits seeking money damages against them in their official capacities. *See Boone v. Kentucky,* 72 Fed. Appx. 306, 307 (6th Cir. 2003) (holding that a § 1983 suit against county prosecutors in their official capacities "is deemed to be a suit against the state and also barred by the Eleventh Amendment"); *Pusey v. City of Youngstown,* 11 F.3d 652, 657 (6th Cir. 1993) ("City prosecutors are responsible for prosecuting state criminal charges . . . Clearly, state criminal laws and state victim impact laws represent the policy of the state. Thus, a city official pursues her duties as a state agent when enforcing state law or policy."), *cert. denied,* 114 S. Ct. 2742 (1994); *Smeal ex. rel. Smeal v. Alexander,* 2006 WL 3469637, at *6 (N.D. Ohio Nov. 30, 2006).

Here, the Plaintiffs seek money damages from the County Prosecutors in their official capacities. The Prosecutors, however, were clearly acting as agents or instrumentalities of the State of Ohio with regard to its filing and prosecuting state criminal offenses against Plaintiff Elkins. This

-6-

Case No. 5:06-CV-3004
Gwin, J.

Court thus finds that the Plaintiff's § 1983 claim against the Prosecutor Defendants in their official capacities is barred by the Eleventh Amendment because the State of Ohio is the real party in interest.

*2. Absolute Immunity: County Prosecutors in Their Individual Capacities*

As described above, the County Prosecutors acted as state agents when they acted in their prosecutorial capacity and were thus entitled to Eleventh Amendment immunity. Apart from their Eleventh Amendment argument, the Defendants also argue that the § 1983 claim against the County Prosecutors in their individual capacities is stopped by the common law doctrine of absolute immunity.

Courts extend absolute immunity to prosecutors for "those acts falling within a prosecutor's role as advocate for the state and intimately associated with the judicial process, and not for administrative or investigative acts antecedent or extraneous to the judicial process." *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997). Absolute immunity applies even if the prosecutor acts with malice or knowledge. *Imbler v. Pachtman*, 424 U.S. 409, 424-25 (1974). The Supreme Court has acknowledged that this doctrine may "leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Id.* at 427. The Supreme Court, however, notes that "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id.* at 427-28. *See also Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). The official seeking absolute immunity bears the burden of proving that the immunity is justified. *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Case No. 5:06-CV-3004
Gwin, J.

The Sixth Circuit has noted that prosecutorial immunity has been broadly construed to "cover any activities undertaken 'in connection with [one's] duties in functioning as a prosecutor.'" *Id.* (citing *Higgason v. Stephens,* 288 F.3d 868, 877 (6th Cir. 2002)). State prosecutors are therefore absolutely immune from liability in § 1983 actions for acts undertaken in preparation for, and during, trial, including decisions to file criminal complaints and seek arrest warrants. *See Buckley,* 509 U.S. at 271-76; *Joseph v. Patterson,* 795 F.2d 549, 555 (6th Cir. 1986).

The Supreme Court has explained, however, that a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley,* 509 U.S. at 273. Prosecutors are not absolutely immune, for example, for investigative acts conducted before probable cause for a suspect's arrest exists or for out-of-court statements to the press. *Id.* at 277. The court thus must apply a functional test to determine if the nature of the actions taken by prosecuting attorney defendants are sufficiently connected to the judicial process to warrant the shield of absolute immunity. *See Gregory v. City of Louisville,* 444 F.3d 725 (6th Cir. 2006).

In a similar case before the Sixth Circuit, the plaintiff, a wrongfully imprisoned man whose conviction for murder was later vacated, sued the prosecuting attorneys who had helped to wrongfully convict him. *Spurlock v. Thompson,* 330 F.3d 791 (6th Cir. 2003). The Sixth Circuit held that the prosecutor's decision to have witnesses testify falsely at the criminal trial was protected by the shield of absolute immunity. In that case, the Sixth Circuit identified several prosecutorial actions that are entitled to absolute immunity because of their intimate association with the role of the prosecutor as state advocate, including: the "professional evaluation of the evidence assembled by the police," the "suppression of material evidence" at the criminal trial, the "preparation of

Case No. 5:06-CV-3004
Gwin, J.

witnesses for trial," the "out-of-court effort to control the presentation of a witness' testimony," and "even the knowing presentation of false testimony at trial." *Id.* at 797 (internal citations omitted). The Sixth Circuit noted, however, that the prosecutor's threats to a witness over a year after the conclusion of the criminal trial and his cover up of a failure to disclose exculpatory evidence after the defendant was convicted were not actions protected by absolute immunity because the prosecutor was no longer acting as an advocate for the State. *Id.* at 799-801.

In this case, Plaintiff Elkins' § 1983 claim against the County Prosecutors arises primarily out of prosecutorial decisions to bring criminal charges against Plaintiff; to procure and produce allegedly false testimony; to deliberately withhold allegedly exculpatory materials; and to fabricate evidence. Under the standard enunciated in *Spurlock*, however, the County Prosecutors' actions in preparation for, and during, the criminal trial arose while the prosecutors were acting as advocates for the interests of the State and thus they are absolutely immune from suit.

The Plaintiffs also vaguely assert that the prosecuting attorneys continued to withhold evidence and make defamatory comments after Plaintiff Elkins was convicted, but the Court finds that the Prosecutors cannot be found liable on these grounds. Plaintiff Elkins was convicted of the crimes charged on June 4, 1999. Defendant McCarty was appointed to serve as a judge on the Akron Municipal Court a month prior to Plaintiff Elkins' trial, in May 1999, and therefore was no longer even employed by the Prosecutors Office during the relevant time period. [Doc. 10 at 1.] In the years following Plaintiff Elkins' conviction, Defendant Walsh represented the State in Plaintiff Elkins' post-conviction relief proceeding. *See State v. Elkins,* 2003 WL 22015409 (Ohio Ct. App. 2003). Prosecutors are entitled to absolute immunity during post-trial proceedings when they continue to act as advocates for the state. *Spurlock,* 330 F.3d at 799. Further, the post-trial events of which the

Case No. 5:06-CV-3004
Gwin, J.

Plaintiffs complain appear to relate primarily to their state law tort claims and not the § 1983 claim.

### 3. The County Prosecutor's Office as Defendant

The County Defendants argue that the Summit County Prosecutor's Office cannot be sued because it is not a political subdivision and has no independent existence. This Court agrees. The Sixth Circuit recently affirmed a dismissal of a county sheriff's office because "under Ohio law, a county sheriff's office is not a legal entity capable of being sued for purposes of § 1983." *Petty v. County of Franklin, Ohio,* 478 F.3d 341, 347 (6th Cir. 2007). *See also Watson v. Gill,* 40 Fed. Appx. 88, 89 (6th Cir. 2002). This reasoning extends to bar § 1983 suits against county prosecutor's offices because county prosecutor's offices have no independent legal existence. *See, e.g., Bohne v. Erie County Sheriff's Dept.,* 1999 WL 690188, at *6 (N.D. Ohio 1999).

### 4. The County of Summit as Defendant

The County Defendants also allege that Plaintiffs have failed to state a claim against Summit County. The liability of local governments under 42 U.S.C. § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a "policy" or "custom" attributable to the local government. *See Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994); *Halloway v. Brush,* 220 F.3d 767, 772 (6th Cir. 2000). The county can only be held liable if its "official policy," not the acts of its agents, were the source of constitutional injury. *Id.* at 773. The Supreme Court has held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 694 (1978).

Case No. 5:06-CV-3004
Gwin, J.

To establish municipal liability under section 1983 for a failure to train local government employees, it must be shown that: "the training program is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or actually caused the plaintiff's injury." *Kanavos v. Hardeman,* 162 F.3d 1161, at *7 (6th Cir. 1998) (citing *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994)). Deliberate indifference "must reflect a 'deliberate' or 'conscious' choice by the municipality." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989).

In this case, Plaintiff Elkins has not alleged that Summit County had a custom or policy in place that resulted in the violation of his constitutional rights. Rather, Plaintiff makes some claim that the County was deliberately indifferent to the alleged bad acts of its employees by failing to train or supervise them. The Plaintiffs, however, have alleged no facts that demonstrate that Summit County officials with policymaking authority made a conscious choice not to train or supervise their attorneys, or that the Plaintiff's constitutional injuries resulted from such failure. Neither Summit County nor the individual prosecutors can be liable as principals under a theory of vicarious liability for the § 1983 claim. *Monell,* 436 U.S. at 691. Even a liberal construction of Plaintiff's claims therefore requires a finding that the § 1983 claims against Summit County must be dismissed.

*5. Court of Claims Settlement*

In the alternative, this Court also finds that all of the Plaintiffs' claims against the County Defendants are barred by the settlement agreement and release, filed on May 5, 2006, between Plaintiff Clarence Elkins and the State of Ohio in the Ohio Court of Claims Case No. 2006-01599 WI. [Doc. 10-7.] The Court of Claims case arose out of the exact same facts regarding the arrest, indictment, prosecution, and imprisonment of Plaintiff Clarence Elkins as this present litigation.

-11-

Case No. 5:06-CV-3004
Gwin, J.

[Doc. 10-4.] Pursuant to the settlement agreement reached in the wrongful imprisonment litigation, the State of Ohio provided $1,075,000 to Plaintiff Elkins. [Doc. 10-7 at 2.] Further, the release that Plaintiff Elkins agreed to in the Court of Claims proceeding reads, in pertinent part, as follows:

> The Plaintiff, Clarence Elkins, does hereby release, hold harmless from any liability, and forever discharge the State of Ohio, their agents, servants, employees and officers, personally and in any other capacity, from any and all claims, actions, causes of action, demands, costs, loss of services, expenses, and any and all other damages which the undersigned ever had, now has, or may have, or claim to have, against the State of Ohio, or their agents, servants, employees or officers, on account of or in any way arising out of the incident stated in the Complaint filed in Ohio Court of Claims Case No. 2006-01599 WI.

*Id.* at 4.

Plaintiff Elkins argues that his claims against the County Defendants are not barred by this settlement and release language because, under O.R.C. § 109.36(A)(2), the term "officer or employee" of the state does not include employees of any political subdivision of the state and the jurisdiction of the Court of Claims does not extend to claims against county employees. The settlement and release in this case, however, is not a court order issued by the Court of Claims; it is a voluntary settlement agreement reached by the parties and thus the jurisdiction of the Court of Claims is not relevant to this Court's treatment of the contract entered into by Plaintiff Elkins. Further, this Court has already determined above, pursuant to binding Sixth Circuit authority, that the County Prosecutors acted as agents or instrumentalities of the State of Ohio in prosecuting this case. *See Boone,* 72 Fed. Appx. at 307; *Smeal,* 2006 WL 3469637, at *6; *Ankrom v. Hageman,* 2005 WL 737833, at *9 (Ohio Ct. App. 2005).

### B. State Law Causes of Action

Having already dismissed the sole federal claim against the County Defendants, this Court

Case No. 5:06-CV-3004
Gwin, J.

declines to exercise supplemental jurisdiction over the remaining state law claims. [Doc. 39.] District courts may decline to exercise supplemental jurisdiction if "the court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Sixth Circuit has instructed that "if the federal claims are dismissed before trial, . . . the state claims generally should be dismissed as well." *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 233 (6th Cir. 1997) (*citing Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992). Thus, under § 1367(c)(3), the Court declines to exercise supplemental jurisdiction. In the alternative, the Court finds that the state law claims are barred by the settlement agreement and release as previously discussed.

### IV. Conclusion

For the above reasons, the Court **GRANTS** the Summit County Defendants' motion to dismiss all claims against them.

IT IS SO ORDERED.

Dated: March 5, 2008                         s/        *James S. Gwin*
                                             JAMES S. GWIN
                                             UNITED STATES DISTRICT JUDGE