UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                          :
CLARENCE ELKINS, ET AL,                   :      CASE NO. 5:06-CV-3004
                                          :
            Plaintiffs,                   :
                                          :
vs.                                       :      ORDER & OPINION
                                          :      [Resolving Doc. No. 126]
SUMMIT COUNTY, OHIO, ET AL,               :
                                          :
            Defendants.                   :
                                          :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

       Defendants City of Barberton, Chief of Police Michael Kallai, Sergeant Peter Maurer, Officer

Danton Adair, Detective M. Hudak, Detective J. L. Flaker, Detective B. Davis, Sergeant Don

Adamson, and Detective Jim Weese (collectively, the "Barberton Defendants"), move this Court for

summary judgment.  [Doc. 126.][1/]  Plaintiffs Clarence Elkins, Sr., Melinda Elkins-Dawson, Brandon

Elkins, Clarence Elkins, Jr., and Anne Silagy, bankruptcy trustee, (collectively, the "Elkins

Plaintiffs"), oppose the motion. [Doc. 134.]

       For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

Barberton Defendants' motion for summary judgment.

## I. Background

       On June 6, 1998, Judith Johnson was raped and murdered in her home in Barberton, Ohio.

[Doc. 39 at 3.] Her granddaughter, Brooke Sutton, age six at the time, was also assaulted and raped.

Based on statements about the perpetrator allegedly provided by Brooke, the Barberton Police

---

       [1/]On March 5, 2008, the Court dismissed Defendants Flaker and Weese without prejudice on the grounds of
insufficiency of service of process. [Doc. 97.] However, because they have since authorized acceptance of service on
their behalf by counsel, they remain parties to the case. [Doc. 126 at 1 n.1.]

Case No. 5:06-CV-3004
Gwin, J.

Department arrested her uncle, Plaintiff Clarence Elkins, Sr. ("Elkins").  On June 10, 1998, a Summit

County Grand Jury indicted Elkins on charges of aggravated murder, attempted aggravated murder,

rape, and felonious assault.  [*Id.* at 4.]

The following year, Elkins' criminal case proceeded to a jury trial.  Although granddaughter

Brooke testified, identifying Elkins as the perpetrator, Elkins offered significant evidence that

someone else committed the crimes.  Melinda Elkins, Clarence Elkins' then-wife[2] and victim Judith

Johnson's daughter, testified that Elkins had been home with her, more than 40 miles from Johnson's

home where the crimes occurred. [Doc. 133, Ex. 23.]  More important, police had recovered hairs

"from the anus of victim Johnson . . . [different] from victim Johnson . . . [that] did not match known

head hair standards from subject [Clarence] Elkins." [Doc. 133, Ex 38.] On June 4, 1999, the jury

convicted Plaintiff Elkins of all the crimes for which he was indicted and, two weeks later, the court

sentenced Elkins to life in prison with no eligibility for parole until 2054. [Doc. 39 at 4.]

In 2002, Brooke recanted her testimony, but the state court decided not to reverse the

conviction.  [Doc. 39 at 5.] In 2005, Plaintiff Elkins again presented new evidence to the court, but

his request for a new trial was not granted.  [*Id.*]  That same year, Plaintiff Elkins obtained DNA

evidence from an inmate that Elkins believed may have been involved with Johnson's murder.  The

other inmate, Earl Mann, had resided at the house next door to the murder scene and had later been

convicted of rape. [Doc. 133, Ex. 51.] Later testing showed that Mann's DNA matched the DNA

found at Johnson's murder scene. [Doc. 133, Exs. 7-8.] This discovery prompted an investigation

that ultimately resulted in the Plaintiff's release from prison, after having been incarcerated for more

---

[2]Clarence and Melinda Elkins divorced in 2007 and Melinda now uses the name Elkins-Dawson. [Doc. 126-3 at 6-7.]

Case No. 5:06-CV-3004
Gwin, J.

than seven years.  Mann ultimately pled guilty to murdering Johnson. [Doc. 133, Ex. 53.]  Upon the

dismissal of the criminal case against Plaintiff Elkins, the Summit County Court of Common Pleas

found that the Plaintiff was a "wrongfully imprisoned person" and the State of Ohio awarded Elkins

$1,075,000 as a wrongful imprisonment settlement. [Docs. 10-3, 10-7.]

    On December 18, 2006, Plaintiff Clarence Elkins and his sons, Clarence, Jr., and Brandon,

sued multiple defendants.  Among the original defendants, the City of Barberton and individual police

officers ("the Defendant Officers") remain.  With their complaint, the Plaintiffs allege violations of

federal and state law relating to Plaintiff Elkins' wrongful arrest, conviction, and imprisonment.

[Doc. 1.]

    In the complaint, the Plaintiffs make several claims against the Barberton Defendants: (1) a

claim for violation of Plaintiff Elkins' constitutional right to due process brought under 42 U.S.C. §

1983; (2) a state-law false imprisonment claim; (3) a state-law malicious prosecution claim; (4) a

state-law abuse of process claim; (5) a state-law claim based on defamation and/or slander; (6) a

state-law invasion of privacy claim; (7) a state-law negligent supervision and retention claim; (8) a

state-law loss of consortium claim brought by Plaintiff Elkins' two sons and ex-wife; and (9) a state-

law intentional infliction of emotional distress tort claim. [*Id.*] On August 17, 2007, the Plaintiffs filed

an amended complaint, adding (10) a failure to intervene claim; (11) a claim for conspiracy to deprive

Plaintiff Elkins of his constitutional due process rights brought under 42 U.S.C. § 1983; and (12) a

claim against the City of Barberton under the doctrine of respondeat superior.[3/]  [Doc. 39.]

    Initially, the Elkins Plaintiffs abandon several of their claims against the Barberton Defendants

_____

[3/] The Plaintiffs also filed a second amended complaint on August 21, 2007. [Doc. 60.] The Court, however, had already set the deadline for amendment of pleadings for August 17, 2007. [Doc. 24.] The Plaintiffs' second amended complaint was not filed with leave of the Court and thus was not properly filed.

-3-

Case No. 5:06-CV-3004
Gwin, J.

in their opposition to summary judgment.  The Plaintiffs admit that they "do not object to entry of summary judgment" on the claims for (4) abuse of process; (5) defamation and/or slander; (6) invasion of privacy; (7) negligent supervision and retention; and (12) liability under respondeat superior. [Doc. 134 at 20.]  Nor do the Plaintiffs object to the dismissal of Defendants Kallai, Maurer, and Davis. [Id.] The Court therefore dismisses those claims against all of the Barberton Defendants, and dismisses individual Defendants Kallai, Maurer, and Davis.  Further, the Plaintiffs do not respond to the City's argument that it is entitled to immunity on the state-law claims under the Ohio sovereign immunity statute.  *See* O.R.C. § 2744.02.  The Court agrees that the Plaintiffs have failed to present sufficient evidence to withstand summary judgment on these unaddressed claims and the Defendant City of Barberton is entitled to judgment as a matter of law on the state-law claims.

### A. Liability of the Defendant Officers

The Plaintiffs bring claims under 42 U.S.C. § 1983 against the Defendant Officers, alleging that they deprived Elkins of his constitutional right to a fair trial and conspired to deprive Elkins of his constitutional rights.  [Doc. 39.] The Plaintiffs also bring a claim against "one or more of the Defendants" for failing to intervene to prevent the violation of Elkins' constitutional rights. [Id.] Finally, the Plaintiffs bring state-law claims against the Defendant Officers for false imprisonment, malicious prosecution, intentional infliction of emotional distress, and loss of consortium.

The Defendant Officers argue that they are entitled to summary judgment on the Plaintiffs' § 1983 claims because the officers are qualifiedly immune from suit.  The Defendant Officers say that their actions were objectively reasonable and that they did not violate a clearly established right.  Further, the Defendants argue that even if the claims were considered on the merits, the Officers would be entitled to summary judgment because none of their behavior resembled the kind of conduct

Case No. 5:06-CV-3004
Gwin, J.

necessary to support a substantive due process claim.  With respect to the state-law claims, the

Defendant Officers argue that there was sufficient probable cause to arrest and prosecute Clarence

Elkins, which undermines the false imprisonment and malicious prosecution claims.  The Defendant

Officers also claim that they are immune from suit according to Ohio law.  *See* O.R.C. § 2744.03.

*1. § 1983 Claims for Deprivation of Due Process and Conspiracy*

Section 1983 gives this Court jurisdiction over actions seeking recovery for constitutional

deprivations suffered under the color of state law. 42 U.S.C. § 1983 (stating that every person who,

under color of state law, causes "the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws, shall be liable to the party injured. . . .").

*a. Constitutional Deprivation - Brady Violation*

The Plaintiffs say the Defendant Officers committed a *Brady* violation by failing to disclose

an incriminating statement that Earl Mann made before Clarence Elkins' trial.  On January 5, 1999,

four months before Clarence Elkins' criminal trial began, Barberton Police Officer Gerard Antenucci

arrested Earl Mann for robbery. [Doc. 133, Ex. 27.]  During the course of his arrest for robbery,

Mann, drunk and somewhat belligerent, asked Officer Antenucci, "Why don't you charge me with

the Judy Johnson murder?" [Doc. 133, Ex. 47.][4]  Because he had been trained, "if you do something

or hear something or know something that the Detective Bureau should know about, put it in a

memo," Antenucci wrote an interdepartmental memo and directed it to the Detective Bureau. [Doc.

133, Ex. 14.] Police department procedure instructed that such memos delivered to a box that would

be collected daily by a member of the Detective Bureau [*See* Doc. 136-4] The reports would then be

---

[4]Although the exact wording of the question is unknown, neither party disputes the gist of it. [Doc. 134 at
4; Doc. 136 at 2 n.2.]

Case No. 5:06-CV-3004
Gwin, J.

disseminated to those Detectives working on the specific case. [*See* Doc. 133, Exs. 15, 17, 18.] Officer Antenucci's January 5, 1999 memo relating that Mann had made this arguably inculpatory statement (the "Mann memo") was never disclosed to Elkins or his attorneys before his murder trial. [Doc. 133, Ex. 19.]

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *See also United States v. Agurs*, 427 U.S. 97 (1976).  In a later case, the Court explained, "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  This responsibility to disclose material evidence extends to the police in the sense that to comply with *Brady*, a prosecutor has an obligation to "learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

The Court finds that, with respect to the Mann memo, a *Brady* violation occurred in this case. There is no debate that the Mann memo existed.  There is also no debate that the Barberton Defendant Officers failed to give the Mann memo to the prosecutor in the Elkins case, or that Elkins never received the memo.

The parties debate whether the Mann memo was material – whether there is a reasonable probability it would have led to a different result in Clarence Elkins' trial.  The Plaintiffs, quoting this Court, note that "the court must view the undisclosed evidence in relation to the record as a whole,

-6-

Case No. 5:06-CV-3004
Gwin, J.

as the materiality of exculpatory evidence will vary with the overall strength of the government's case." [Doc. 134 at 15 (quoting *Dennis v. Mitchell*, 68 F.Supp.2d 863, 900 (N.D. Ohio 1999)).]

According to the Plaintiffs, Elkins' attorneys had conducted a diligent investigation. [Doc. 133, Ex. 19.] Defense counsel and Melinda Elkins expended considerable effort trying to track down other possible leads or suspects. Had they known that Mann, someone who lived next door to the murder site, had made a self-incriminating statement, they would have secured testing of Mann's DNA. If DNA testing had been conducted, Mann would have been identified as Judith Johnson's killer. [Doc. 134 at 15; *see also* 5-9.] In response, the Defendants argue that the memo did not include a genuine inculpatory statement by Mann. [Doc. 136 at 2.] Even if it had, the Defendants seem to question whether it would have led to fruitful investigation of Mann, considering that he was not at the time a known sex offender. [Doc. 136 at 4 n.6.][5/]

The Court easily finds that the Plaintiffs have offered sufficient evidence demonstrating that if the Mann memo had been disclosed to defense counsel, there is a reasonable probability Clarence Elkins would not have been convicted. If defense counsel had been alerted to Mann's potentially inculpatory statement made at the time of his arrest, counsel would have sought an examination of Mann's DNA to compare it with the hair sample found in Johnson's anal area. When Mann was arrested for robbery, he listed his address as 116 Summit Street, an address next door to the murder scene. [Doc. 133, Ex. 27.] Mann lived at that address with his girlfriend, Tonia Brasiel, the mother of his children. Mann's proximity to the Johnson home would have been immediately known to defense counsel and the Elkins family, who would have recognized 116 Summit Street as Tonia

---

[5/]Mann was eventually charged and convicted of raping his own three daughters, but the investigation that led to his arrest on those charges did not begin until September 2000. [*See* Doc. 136, Ex. 4.]

Case No. 5:06-CV-3004
Gwin, J.

Brasiel's address.

After awakening the next morning and leaving the scene of the crimes, granddaughter Brooke had gone to Brasiel's home seeking help. When Brooke arrived, Brasiel strangely did not call 911 or check on Johnson. Instead, Brasiel first left Brooke waiting at the door, and then gathered her children and drove Brooke home. Brasiel later testified for the government at Clarence Elkins' trial. Knowing that Brasiel was intimately involved in the events the morning of the crime's discovery and had acted unusually in failing to call 911, no one can plausibly say that knowledge of Mann's statement to Officer Antenucci would not have made a difference in Clarence Elkins' conviction. Elkins' defense counsel could have easily found that Mann was on parole at the time of the crime and that he had children with Brasiel. Getting a hair sample from Mann would have been a next logical step, especially in light of the fact that police had gotten hair samples from other possible suspects. [*See* 133, Exs. 32, 33.] That hair sample would have pointed to Mann, as it excluded Elkins. Especially in light of the very weak direct evidence against Clarence Elkins in the first place (most notably because he was not the source of the pubic hair found at the crime scene), the Mann memo was highly material.

### b. Section 1983 Liability for Brady Violation

Police officers who withhold material exculpatory evidence from the prosecution, thereby preventing the evidence from being turned over to the defense, can be held personally liable under § 1983 for the *Brady* violation. *See, e.g., Tennison v. City and County of San Francisco*, 548 F.3d 1293, 1301-02 (9th Cir. 2008); *Porter v. White*, 483 F.3d 1294, 1304 (11th Cir. 2007); *Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir. 2004); *Newsome v. McCabe*, 256 F.3d 747, 752-53 (7th Cir.

Case No. 5:06-CV-3004
Gwin, J.

2001).[6/] Circuit courts disagree, however, about what level of culpability is required to find police

officers personally liable under § 1983 for *Brady* violations. *See Tennison*, 548 F.3d at 1302 ("The

Inspectors also argue that Plaintiffs must establish that the Inspectors acted in bad faith in order to

establish § 1983 liability . . . The district court properly rejected this argument."); *Porter*, 483 F.3d

at 1305-08 ("[A] negligent act or omission cannot provide a basis for liability in a § 1983 action

seeking compensation for loss of liberty occasioned by a *Brady* violation."); *Villasana*, 368 F.3d at

980 ("[T]he recovery of § 1983 damages requires proof that a law enforcement officer other than the

prosecutor intended to deprive the defendant of a fair trial."). The Sixth Circuit has not yet spoken

on the culpability issue in § 1983 cases for *Brady* violations.

This Court agrees with the Ninth Circuit in its conclusion that there is no bad faith

requirement in order to establish § 1983 liability for a police officer who violates *Brady*. *See

Tennison*, 548 F.3d at 1302. In *Daniels v. Williams*, 474 U.S. 327 (1986), the Supreme Court

reiterated its previous holding that § 1983 "contains no state-of-mind requirement independent of that

necessary to state a violation of the underlying constitutional right." *Daniels*, 474 U.S. at 329-30.[7/]

The underlying constitutional right in this case is the Fourteenth Amendment right to procedural due

process, specifically the right to not have material exculpatory evidence withheld by the state in

violation of *Brady*. Therefore, to make a claim under § 1983 for the withholding of exculpatory

---

[6/]Although the Sixth Circuit has not outright held that a police officer can be personally liable under § 1983
for a *Brady* violation, the Circuit has assumed as much. *Gregory v. City of Louisville*, 444 F.3d 725, 743-44 (6th Cir.
2006) (holding the Sixth Circuit had no jurisdiction on interlocutory appeal of denial of summary judgment on the basis
of law enforcement officers' qualified immunity to § 1983 claims for withholding exculpatory evidence, because there
existed genuine issues of fact for trial).

[7/]In so finding, the Court noted that "depending on the right, merely negligent conduct may not be enough
to state a claim [under § 1983]." *Daniels*, 474 U.S. at 330. This implies, however, that depending on the right,
negligent conduct *may* be enough.

Case No. 5:06-CV-3004
Gwin, J.

information by a police officer, in violation of *Brady*, a plaintiff must show the state-of-mind requirement necessary for a *Brady* violation. *Brady* clearly holds that such withholding of evidence violates due process "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Accordingly, applying the *Brady* intent standard to a § 1983 claim for a *Brady* violation, plaintiffs can make a claim under § 1983 against police officers for withholding material exculpatory evidence regardless of any bad faith on the part of the police officers.[8/]

The Court finds that the Plaintiffs have alleged sufficient facts to show that the Defendant Officers withheld the exculpatory Mann memo. Construing all inferences in favor of the Plaintiffs, the non-moving party, the following is true: On January 5, 1999, Officer Antenucci wrote the memo and directed it, per police policy and usual custom, to the Detective Bureau. [Doc. 133, Exs. 14, 47.] He dropped the memo in a box or slot outside the bureau. [Doc. 133, Ex. 14; *see also* Doc. 136-4.] The first Detective to arrive to work the following day would have picked up the memo, and according to police practice, delivered the memo to the Officers assigned to the case. [Doc. 133, Ex. 18.] In January 1999, the Detectives working the Elkins case were Defendants Adair, Adamson, Hudak, Flaker, and Weese. [Doc. 133, Exs. 15, 16.] According to the evidence presented, at the time there were, at most, only two other individuals working in the Detective Bureau. [Doc. 133, Exs. 15, 16.] In the long and extensive course of the Elkins case, the Mann memo was the only relevant

_____

[8/] In finding that such a § 1983 claim for a *Brady* violation does require a showing of more than negligence, the Eleventh Circuit rejected this neat transference. *Porter*, 483 U.S at 1306 ("We hold that the no-fault standard of care *Brady* imposes on prosecutors in the criminal or habeas context has no place in a § 1983 damages action against a law enforcement official in which the plaintiff alleges a violation of due process."). Although acknowledging the *Daniels* finding that § 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right," the Eleventh Circuit considered the underlying constitutional right in cases involving *Brady* violations to be a due process right, and so relied on a later Supreme Court ruling citing *Daniels*, that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Porter*, 483 F.3d at 1308 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

-10-

Case No. 5:06-CV-3004
Gwin, J.

document to be lost, discarded, or destroyed. [Doc. 133, Ex. 50 at ¶ 6.] No one deposed in this case

can recall any similar loss of a police report. [*See* Doc. 133, Exs. 14, 17.]

Further, although unnecessary to succeed on a § 1983 claim for a *Brady* violation, the Court

finds the evidence sufficient to allow a jury to infer more than mere negligence by the Defendant

Officers.  As previously discussed the Court holds that negligence is sufficient to make a § 1983 claim

for a *Brady* violation because the *Brady* standard includes no intent requirement.  However, even if

the § 1983 claim requires a showing of more than mere negligence, specific intent to deprive the

plaintiff of his constitutional rights is certainly not necessary.  *See Holt v. Artis*, 843 F.2d 242, 244

(6th Cir. 1988); *see also Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989) ("A number of

circuits have held recklessness or gross negligence sufficient to state a section 1983 claim; none has

held that only intentional misconduct will suffice.").

The Defendant Officers investigating the Johnson murder knew the case against Clarence

Elkins was tenuous.  Most notably, forensic evidence showed that someone other than Elkins left a

hair sample in Johnson's anal cavity. [Doc. 133, Ex. 38.] In the face of this forensic evidence, the

Officers relied upon evidence of Elkins' hostile relationship with Johnson, including a possible prior

threat, and upon the identification by granddaughter Brooke to make the case.  However, that

testimony was of questionable credibility, as it came from a six-year-old child who was herself raped

and brutally attacked and had limited ability to observe the offender.  *See* Ohio R. Evid. 601 ("Every

person is competent to be a witness except: (A) Those of unsound mind, *and children under ten

years of age*, who appear incapable of receiving just impressions of the facts and transactions

respecting which they are examined, or of relating them truly.") (emphasis added).  In light of the

weakness of the case against Elkins, the Court finds a genuine issue of material fact as to how

Case No. 5:06-CV-3004
Gwin, J.

culpable the Officers were.  The question of culpability should be reserved for the jury.  *See Gregory v. City of Louisville*, 444 F.3d at 743-44.

The Court concludes that the Plaintiffs have made a sufficient showing that the Defendant Officers violated Clarence Ekins' due process rights under the Fourteenth Amendment by withholding the Mann memo.

The Plaintiffs have not, however, made a sufficient showing that the Defendant Officers conspired to violate Elkins' due process rights.  "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action."  *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000).  Although conspirators need not expressly agree, or know all the details or participants of the conspiracy, they must nonetheless agree to join the conspiratorial objective.  *Id.*  Moreover, "[c]laims of conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim."  *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Circ. 2004).

The Elkins Plaintiffs have failed to show any material facts of such an agreement between the Defendant Officers.  In their complaint, the Plaintiffs allege that the Defendants:

> [R]eached an agreement amongst themselves to frame Mr. Elkins for the crime, and to thereby deprive Mr. Elkins of his constitutional rights . . . .
> Independently, before and after Mr. Elkins' convictions, each of the Defendants further conspired, and continue to conspire, to deprive Mr. Elkins of exculpatory materials to which he was lawfully entitled and which would have let to his more timely exoneration of the false charges . . . .
> In this manner, the Defendant Officers, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by unlawful means.

[Doc. 39 at 16, ¶¶ 142-44.] Nothing in the summary judgment pleadings adds to these conclusory allegations.  The strongest inference that can be drawn from the evidence presented is that the

Case No. 5:06-CV-3004
Gwin, J.

Defendant Officers received the Mann memo but did not disclose it.  The Plaintiffs present no evidence of any agreement by the Defendant Officers to withhold the memo.  Accordingly, the § 1983 claim against the Defendant Officers for conspiracy to deprive Elkins of his due process rights does not survive summary judgment.

### c. Qualified Immunity

The Defendant Officers argue that they are entitled to qualified immunity from the Plaintiffs' § 1983 claims.  The doctrine of qualified immunity shields state actors from liability based on their discretionary acts.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  In so doing, the doctrine gives state actors the freedom to perform their official duties without fear that even a slight misstep will trigger their financial ruin.  *Wyatt v. Cole,* 504 U.S. 158, 167 (1992).

Nevertheless, state actors lose this immunity when they violate clearly established constitutional rights of which a reasonable person should have known.  *Harlow,* 457 U.S. at 818.  The doctrine thus offers no solace to "the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  The Sixth Circuit sets forth a three-part test for evaluating claims of qualified immunity:

> First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).  *See also Scott v. Harris,* 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

Accordingly, in analyzing the Plaintiffs' § 1983 claims, the Court looks first to whether the

Case No. 5:06-CV-3004
Gwin, J.

Plaintiffs offer sufficient evidence of a constitutional violation.  If so, the Court decides whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  Finally, the Court examines whether the Defendants' actions were objectively unreasonable.

First, the facts, taken in the light most favorable to the Plaintiffs, establish that a constitutional violation may have occurred.  *Saucier,* 533 U.S. at 201.  The Plaintiffs contend that the Defendant Officers withheld exculpatory evidence, in violation of *Brady* and the Due Process Clause of the Fourteenth Amendment.  Construing the facts in the light most favorable to the Plaintiffs means that the Court must assume that the Mann memo was delivered to the Defendant Officers working the Elkins case, according to police policy and custom.  The Court must further assume that having read the memo, the Defendant Officers withheld it, never divulging it to the prosecution, thereby preventing it from being disclosed to the defense.  Finally, the Court finds that the Mann memo was material to the Elkins prosecution, and there is a reasonable probability that, had it been disclosed, Clarence Elkins would not have been convicted.  Thus, the Plaintiffs allege and present cognizable evidence demonstrating sufficient facts to show a constitutional violation that is actionable under § 1983.

Second, a reasonable police officer would know that it is a violation of a clearly established right for police officers to withhold material exculpatory evidence.  The touchstone for this determination is "objective legal reasonableness." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987) (citing *Harlow,* 457 U.S. at 819).  The existence of a known legal right must be adequately particularized to put potential defendants on notice.  *Id.* at 640.  When looking to evidence of a clearly established right, a district court must generally "find binding precedent by the Supreme Court, its court of appeals or itself." *Russo v. Cincinnati,* 953 F.2d 1036, 1043 (6th Cir. 1992) (internal

-14-

Case No. 5:06-CV-3004
Gwin, J.

citation omitted).

Precedent clearly establishes the general right not to have exculpatory evidence withheld by the state. *Brady*, 373 U.S. at 87. In 1999, police officers were on notice that a *Brady* violation could result if police officers failed to provide exculpatory evidence to the prosecution, irrespective of bad faith. *Kyles*, 514 U.S. at 437-38. The Defendant Officers "cannot seriously contend that a reasonable police officer would not know that such actions were inappropriate and performed in violation of an individual's constitutional and/or statutory rights." *Spurlock v. Satterfield*, 167 F.3d 995, 1005 (6th Cir. 1999). Here, the Defendant Officers undoubtedly knew of Clarence Elkins' right not to have exculpatory evidence withheld by the police.

Third, the Plaintiff has alleged sufficient facts to indicate that the Defendant Officers acted unreasonably. A jury could conclude that it was objectively unreasonable for the Defendants to receive a report that another man with a criminal history of violent behavior asked the police why he was not charged with the Johnson murder, and then neither follow up on the potential suspect nor disclose the information to the defense. This could seem particularly unreasonable given that the man listed his address as next door to the crime scene and the home where granddaughter Brooke sought refuge after the brutal crime. Defendant Officers Adair, Adamson, Hudak, Flaker, and Weese all had an obligation to disclose any exculpatory evidence material to Clarence Elkins' case. Construing the facts in the light most favorable to the Plaintiffs, it was objectively unreasonable for the officers working on Clarence Elkins' case to withhold evidence of another potential suspect.[9]

---

[9] While a jury may find that not all of the individual Defendant Officers are liable under § 1983, the Court cannot conclude as a matter of law that any of the officers are entitled to qualified immunity. All of the Officers were Detectives in 1999 and working on the Elkins case. As a result, according to police policy, they would have received the Mann memo, or at least been made aware of its content.

Case No. 5:06-CV-3004
Gwin, J.

The Plaintiffs offer sufficient evidence to show a constitutional violation of Clarence Elkins'

clearly established right not to have exculpatory evidence withheld by the police. These individual

Defendants, therefore, are not entitled to qualified immunity in this case.  Accordingly, the Court

denies the Defendant Officers' summary judgment motion as to the Plaintiffs' § 1983 deprivation of

due process claim.

### 2. Claim for Failure to Intervene

The Elkins Plaintiffs also make a claim that the Barberton Defendants failed to intervene to

prevent the constitutional violations alleged. [Doc. 39 at 15-16.] Although not specifically pled, the

Court assumes that the Plaintiffs refer to the failure of one or more of the Defendant Officers to

intervene when one or more other Defendant Officers deprived Elkins' of his due process rights by

withholding exculpatory evidence.  Using the principles discussed above, the Court finds that the

Defendant Officers are entitled to qualified immunity on this claim.

In conducting the qualified immunity analysis, the Court reiterates that there is sufficient

evidence that a constitutional violation occurred when the Mann memo was withheld.  However, the

second step of the qualified immunity analysis changes under this claim.  Certainly, the right to the

*Brady* material is clearly established.  But with respect to the failure to intervene claim, the Court

must ask whether there was a clearly established right for a law enforcement officer to intervene to

prevent another law enforcement officer from withholding exculpatory evidence.  For there to be a

failure to intervene, there must be a corresponding duty.  There is ample Sixth Circuit caselaw

regarding police officers' duty to intervene in excessive force cases. *See e.g.*, *Smoak v. Hall*, 460 F.3d

768, 784-85 (6th Cir. 2006); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Durham v. Nu'Man*,

97 F.3d 862, 866-68 (6th Cir. 1996).  However, the Court finds no such caselaw regarding a duty

-16-

Case No. 5:06-CV-3004
Gwin, J.

to intervene to prevent the withholding of exculpatory evidence in violation of *Brady*. *Cf. Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999) (finding no clearly established law that a police officer who knows another police officer fabricated a confession in a police report for a warrantless arrest has a constitutional duty to intervene). "[G]iven the absence of any case law that has imposed a duty of protection under even roughly analogous circumstances," *Ontha v. Rutherford County*, 222 Fed.Appx. 498, 507 (6th Cir. 2007), it could not be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 207. Therefore, the Court concludes that the failure to intervene claim is independent of the *Brady* claim and that there is insufficient authority to show the Barberton Defendant Officers violated clearly established law.

### 3. Claims for False Imprisonment and Malicious Prosecution

Additionally, the Plaintiffs make claims against the Barberton Defendant Officers for false imprisonment and malicious prosecution, arguing that once the Defendants withheld the Mann memo, they caused the continuation of Clarence Elkins' prosecution despite the disappearance of probable cause. [Doc. 134 at 15.] The Defendants, in support of their motion for summary judgment, respond that there was ample probable cause to arrest and prosecute Clarence Elkins, including the identification by Brooke Sutton. [Doc. 126 at 8.] The Defendants do not believe the Mann memo negated probable cause either because the Defendant Officers were not aware of the memo or because the memo was of little evidentiary value anyway. [*See* Doc. 126 at 2.]

First, the Court considers the false imprisonment claim. Under Ohio law, "[f]alse imprisonment occurs when a person confines another intentionally 'without lawful privilege and against his consent within a limited area for any appreciable time, however short.'" *Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) (quoting *Bennett v. Ohio Dep't of Rehab. & Corr.*, 60 Ohio St.3d 107,

Case No. 5:06-CV-3004
Gwin, J.

573 N.E.2d 633, 636 (1991)).  To make this claim, the Elkins Plaintiffs would need to show that the Defendant Officers *intentionally* withheld the Mann memo and thereby *intentionally* continued to falsely imprison Clarence Elkins.  Even construing all the evidence in the Plaintiff's favor, the Court does not find that the Plaintiffs have made such a showing.  There is no evidence that suggests intent by the Officers; on the facts presented, the Officers could have merely negligently or recklessly failed to disclose the memo.  In the absence of any evidence that the Officers intentionally continued Elkins' imprisonment after learning of the exculpatory evidence, the Court grants the Defendant Officers' motion for summary judgment as to the false imprisonment claim.

Malicious prosecution, however, involves different elements under Ohio law: (1) malicious institution or continuance of an earlier proceeding, (2) lack of probable cause for the earlier proceeding, and (3) termination of the prior lawsuit in favor of the claimant.  *Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) (quoting *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732, 736 (1990).  The third element is met in this case because the prior lawsuit, the prosecution, was resolved in Clarence Elkins' favor when he was exonerated and released from prison.  The Court will therefore consider the first two elements in turn.

In this context, Ohio law defines "malice" as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice."  *Harris v. Bornhorst*, 513 F.3d 503, 521 (6th Cir. 2008) (quoting *Criss v. Springfield Twp.*, 56 Ohio St.3d 82, 564 N.E.2d 440, 443 (Ohio 1990)).  The Sixth Circuit and Ohio courts have further held that "[I]f the lack of probable cause is demonstrated, the legal inference may be drawn that the proceedings were actuated by malice."  *Harris*, 513 F.3d at 521 (quoting *Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003); *Criss*, N.E.2d at 443.  Therefore, survival of the malicious prosecution claim depends on the existence

-18-

Case No. 5:06-CV-3004
Gwin, J.

of probable cause.

In their response to the motion for summary judgment, the Plaintiffs do not contest that there was probable cause for Clarence Elkins' original arrest; they merely contend that once the Defendants withheld the Mann memo, probable cause would have "evaporated." [Doc. 134 at 19.]  Even if there was probable cause at the time of arrest, the withholding of exculpatory evidence can destroy probable cause for continued detention.  *See Gregory*, 444 F.3d at 750.

In *Harris v. Bornhorst*, the Sixth Circuit reviewed a malicious prosecution claim involving a prosecutor who allegedly withheld exculpatory *Brady* evidence.[10/]  The Circuit noted that for the purposes of a malicious prosecution claim, the Ohio courts define probable cause as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [individual] in the belief that the person accused is guilty of the offense with which he [or she] is charged." *Harris*, 513 F.3d at 520 (quoting *Rogers v. Barbera*, 170 Ohio St. 241, 164 N.E.2d 162, 166 (Ohio 1960)).  The Court continued, however, to note that a guilty conviction, even if later reversed, "raises a conclusive presumption of probable cause and constitutes a complete defense in a later action for malicious prosecution . . . ." *Harris*, 513 F.3d at 520 (quoting *Vesey v. Connally*, 112 Ohio App. 225, 175 N.E.2d 876, 878 (Oh.Ct.App.1960)).  However, "fraud or unlawful means in securing a conviction" can negate probable cause as shown by the conviction.  *Vesey*, 175 N.E.2d at 878.  The Sixth Circuit concluded in *Harris* that withholding *Brady* evidence of another potential suspect amounts to securing a conviction through fraud.  *Harris*, 513 F.3d at 521.  Such a case

_____

[10/]Although prosecutors are generally entitled to absolute immunity on personal liability for *Brady* violations, the Sixth Circuit found that this prosecutor was subject to liability because she was acting in an administrative or investigative capacity rather than in her role as an advocate when she instructed the police to arrest the individual. *Harris*, 513 F.3d at 509-11.

-19-

Case No. 5:06-CV-3004
Gwin, J.

therefore lacks probable cause, and a malicious prosecution claim can proceed. *Id.* In this case, where the Plaintiffs have demonstrated sufficient facts to allege a *Brady* violation regarding evidence of another suspect, the Court finds a lack of probable cause in continuing the prosecution against Clarence Elkins. Accordingly, the Court denies the Defendant Officers' motion for summary judgment with respect to the malicious prosecution claim.

### 4. Claim for Intentional Infliction of Emotional Distress

In order to recover on a claim of intentional infliction of emotional distress, Plaintiffs must prove four elements:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."

*Roelen v. Akron Beacon Journal*, 199 F. Supp.2d 685, 696 (N.D. Ohio 2002), (quoting *Pyle v. Pyle*, 11 Ohio App. 3d 31, 34, (1983)). Conduct that is merely cruel or insensitive does not rise to the level of extreme and outrageous conduct necessary to state a claim for intentional infliction of emotional distress. *Roelen*, 199 F. Supp.2d at 696.

Absent contemporaneous physical injury, compensable emotional distress must be severe and disabling. *See Paugh v. Hanks*, 6 Ohio St. 3d 72, syllabus ¶ 3 (1983). Plaintiffs claiming severe and debilitating emotional injury must present some guarantee of genuineness in support of their claim, such as expert evidence, to prevent a court from granting summary judgment in favor of the defendant. *See, e.g., Knief v. Minnich*, 103 Ohio App. 3d 103, 108 (Logan Cty. 1995). This Court must determine whether an alleged injury is sufficiently serious and whether the defendant's alleged

Case No. 5:06-CV-3004
Gwin, J.

conduct was sufficiently extreme and outrageous for the claim to go forward. *Popson v. Danbury Local School Dist.*, 2005 WL 1126732, \*12 (N.D. Ohio, April 28, 2005); *Kovac v. Lowe's Home Centers, Inc.*, 2006 WL 1644336, \*9 (N.D. Ohio, June 7, 2006.)

Construing the facts in the light most favorable to the Plaintiffs, the Court finds that the Plaintiffs have not established that the Defendant Officers' sufficiently extreme and outrageous conduct proximately caused the Plaintiffs' emotional injury.  Plaintiff Clarence Elkins was wrongfully imprisoned for more than seven years for the rape and murder of his mother-in-law and the rape and attempted murder of his six-year-old niece.  The Court does not doubt that Elkins suffered severe and disabling emotional injury as a result of his wrongful imprisonment.  [*See* Doc. 133, Ex. 57.] Construing the facts as described above in finding that the Defendant Officers withheld exculpatory evidence, the Court further finds that the Defendant Officers were the proximate cause of Plaintiff Elkins' emotional injury.  However, just as the Court does not find sufficient evidence to demonstrate that the Defendant Officers *intentionally* withheld the Mann memo, nor does the Court find sufficient evidence to show that the Officers' conduct in withholding the memo was extreme and outrageous. Absent evidence of intent, the Plaintiffs cannot meet this standard.  For this reason, the Defendant Officers are entitled to summary judgment on the Plaintiffs' intentional infliction of emotional distress claim.

### 5. Claim for Loss of Consortium

The Barberton Defendants only defense against the Plaintiffs' claim for loss of consortium is that it "is a derivative claim dependent upon the existence of a primary claim, and it can be maintained only so long as the primary claim continues." [Doc. 126 at 15 (quoting *Keller v. Foster Wheel Energy Corp.* (App. 10 Dist. 2005), 163 Ohio App.3d 325, 330, 2005-Ohio-4821 at ¶ 19).]  The Defendants

Case No. 5:06-CV-3004
Gwin, J.

reason that if they succeed on the other claims, they must also succeed on the loss of consortium claim. But because the Court has found a sufficient showing by the Plaintiffs to succeed on at least some of the claims against the individual Defendant Officers, the loss of consortium claim continues as well. The Court denies summary judgment on this claim to the Defendant Officers.

### 6. Defendant Officers' Immunity for State Law Claims

Finally, the Barberton Defendant Officers argue that they are entitled to immunity on the state-law claims under O.R.C. § 2744.03, the Ohio statute providing defenses and immunities to employees of political subdivisions for claims that result from their governmental functions. O.R.C. § 2744.03. The statute explicitly lists exceptions to the immunity, however, including if "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(6)(b). As described above, the Plaintiffs have presented sufficient evidence at the summary judgment stage to show that the Defendant Officers withheld exculpatory evidence more than negligently. On this basis, the Officers are stripped of immunity for the state-law claims.

### B. Liability of the City of Barberton

The Plaintiffs also allege that the City of Barberton violated 42 U.S.C. § 1983 because the "training and/or supervision was wholly inadequate for the investigation into the Johnson rape [and] murder and the Brooke rape" and that this inadequate training and/or supervision was the result of the City's "deliberate indifference." [Doc. 39 at 12.] The Plaintiffs further allege that the Defendant Officers conspired to deprive Elkins of his constitutional rights "pursuant to the policy and practice of the Barberton Police Department . . . [which] was tacitly ratified by policy-makers for the City of Barberton with final policymaking authority." [Id. at 16.]

-22-

Case No. 5:06-CV-3004
Gwin, J.

The liability of municipal governments under § 1983 depends solely on whether the plaintiff's

constitutional rights have been violated as a result of a "policy" or "custom" attributable to the local

government.  *See Halloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000).  The City of Barberton can

only be held liable if its "official policy," not the acts of its executives or agents, were the source or

cause of Elkins' injury.  *Id.* at 773.  The Supreme Court has held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by
> its employees or agents.  Instead, it is when execution of a government's policy or
> custom, whether made by its lawmakers or by those whose edicts or acts may fairly
> be said to represent official policy, inflicts the injury that the government as an entity
> is responsible under § 1983.

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Thus, a municipality cannot be made liable

under the doctrine of respondeat superior.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986).

A municipality's policy or custom must be the moving force of the constitutional violation to establish

the liability of the government body under § 1983.  *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th

Cir. 1994).

### *1. Failure to Train or Supervise*

The Plaintiffs allege that the City of Barberton has inadequately trained or supervised its

police officers in proper rape and homicide investigation techniques and has done so as part of a

conspiracy to deprive Clarence Elkins of his right to due process.  The Court concludes that the

Plaintiffs have failed to offer sufficient evidence to raise material issues on these § 1983 claims.

To demonstrate municipal liability under § 1983 for failure to train local government

employees, the plaintiffs must show that: (1) the training program is inadequate to the tasks that

officers must perform; (2) the inadequacy is caused by the city's deliberate indifference; and (3) the

inadequacy is closely related to or actually caused the plaintiff's injury.  *Kanavos v. Hardeman*, 162

Case No. 5:06-CV-3004
Gwin, J.

F.3d 1161 (6th Cir. 1998).  Deliberate indifference must reflect a deliberate or conscious choice by

the municipality.  *City of Canton v. Harris*, 489 U.S. 378 (1989).  A municipality may be deliberately

indifferent when "in light of the duties assigned to specific officers or employees the need for more

or different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights . . ."  *Id.* at 390.

In this case, the Elkins Plaintiffs have presented no evidence of inadequate training or

supervision attributable to the City of Barberton.  No evidence regarding the training of Barberton

Detectives was presented at all.  At most, the Plaintiffs have presented evidence of errors made in

evidence collection at the crime scene, excessive reliance on eyewitness testimony, the mishandling

of interviews of a child-victim, witness intimidation, and failure to record witness testimony.

However, there is no evidence that any of these alleged errors, even if committed, were a result of

inadequate training or supervision.  Even the Plaintiffs' own expert testified in his deposition that the

vast majority of the behavior by the Officers of the Barberton Police Department investigating the

Johnson incident was "consistent with generally accepted police practices in Ohio in 1998." [*See* Doc.

126-18.]  While the expert criticized some aspects of the handling of the crime scene, he also

acknowledged that such handling is a subjective judgment call of the officers processing the scene.

[Id. at 12.] With respect to the interviewing of the child-victim, the expert acknowledged that in Ohio

in 1998, "there was no state-mandated training for police officers with respect to the proper

interviewing techniques of child victims." [Id. at 14.] The Plaintiffs simply have presented no evidence

of inadequate training or supervision.

Even if the alleged investigative failures were the result of inadequate training or supervision,

the Plaintiffs certainly have not shown that such inadequacy was the result of the City of Barberton's

Case No. 5:06-CV-3004
Gwin, J.

"deliberate indifference."  They have done no more than cursorily state this. [Doc. 39 at 12, 15-16,

¶¶ 105, 139, 147.] The Court therefore concludes that there is insufficient evidence to lead a jury to

find that the inadequacy of the City of Barberton's training or supervision of its police in conducting

an investigation into rape and homicide - an inadequacy caused by the City's deliberate indifference -

was closely related to or actually caused Clarence Elkins' deprivation of the right to a fair trial and

consequent wrongful imprisonment.

However, even if there were enough evidence to find the City liable under § 1983 for such

a failure to train and supervise, or a failure to intervene, the evidence falls far short of establishing a

"policy" or "custom" on behalf of the City.  The Elkins Plaintiffs have not detailed or described any

such policy or custom.  The sum total of the Plaintiffs' argument on municipal liability is:

> Defendant City claims that it has no unconstitutional policy or custom that caused
> Plaintiffs' injuries.  At the same time, the Defendant City claims that the Defendant
> Detectives all acted consistently with its practices and policies. [Citation omitted.]
> Because a reasonable jury could find that the Defendant Detectives violated
> Clarence's constitutional rights, a reasonable jury could likewise find that the
> Detectives were acting pursuant to the City's policies and practices in doing so.

[Doc. 134 at 20.] This circular logic is insufficient to demonstrate municipal liability, even on a

summary judgment standard, construing all inferences in favor of the Plaintiffs.  The Court agrees

with the Defendants that "the Plaintiffs have not identified any policy (or custom), much less shown

that the policy led to an injury." [Doc. 136 at 6.]  The Court therefore grants summary judgment to

the City of Barberton as to the Plaintiffs' § 1983 claims of deprivation of due process, conspiracy to

deprive of due process, and failure to intervene.

### IV. Conclusion

For the reasons stated above, the Court **DENIES** the Barberton Defendants' motion for

Case No. 5:06-CV-3004
Gwin, J.

summary judgment as to the Defendant Officers' liability on the federal § 1983 claim for a violation

of due process.  The Court also **DENIES** the summary judgment motion as to the Plaintiffs' state-law

claims against the Defendant Officers for malicious prosecution and loss of consortium.  In all other

respects, the Court **GRANTS** the Barberton Defendants' summary judgment motion, and the Court

**DISMISSES** the City of Barberton.

    IT IS SO ORDERED.


Dated: April 28, 2009                     _s/_          _James S. Gwin_____
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE